UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

PATTY RAE STANLEY,                  )
                                    )
    Plaintiff                       )
                                    )
v.                                  )    No. 1:10-cv-345-DBH
                                    )
EATON PEABODY, DANIEL McKAY,        )
and SARAH ZMISTOWSKI,               )
                                    )
    Defendants                      )

### RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants in this action alleging legal malpractice, a law firm and two of its attorneys, move for summary judgment on all counts of the plaintiff's complaint. I recommend that the court grant the motion in part.

### I. Applicable Legal Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.* The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each

supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can trigger serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II. Factual Background

The following undisputed facts are appropriately presented in the parties' respective statements of material facts submitted pursuant to Local Rule 56.

The plaintiff is the former owner of three campgrounds in the Mount Desert Island area of Maine: Mount Desert Narrows, Narrows Too, and Patten Pond (the "campgrounds"). Defendants' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("Defendants' SMF") (Docket No. 27) ¶ 1; Plaintiff's Opposition to Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Additional, Material Facts

3

("Plaintiff's Responsive SMF") (Docket No. 30) ¶ 1. She managed the campgrounds beginning in 1991. *Id*. ¶ 2. Before owning the campgrounds, she was a real estate agent in Colorado for 12 years, where she worked primarily in residential real estate. *Id*. ¶¶ 3-4.

In 2004, the plaintiff entered into negotiations with Equity Lifestyle Properties, Inc. ("ELS") to sell the campgrounds. *Id*. ¶ 6. On November 23, 2004, ELS sent the plaintiff a one-page term sheet outlining proposed terms of a joint venture. *Id*. ¶ 7. The term sheet provided, *inter alia*, that ELS would contribute $6.75 to the joint venture, that the plaintiff could sell her interest to ELS in year 5 or year 7, at a price based on the campgrounds' net operating income. *Id*. ¶¶ 8-9. The plaintiff read and understood the term sheet. *Id*. ¶ 11.

After she received the term sheet, the plaintiff retained defendant Zmistowski, a member of the defendant law firm's real estate department, to represent her with respect to the proposed deal with ELS. *Id*. ¶¶ 12-13.[1] Zmistowski brought in defendant McKay, a member of the law firm's business law department, to assist in the corporate aspects of the deal. *Id*. ¶ 14. Zmistowski did not give McKay any information about the Wayne Klekamp matter[2] or the ELS term sheet that included a purchase price of $14.5 million. Additional Material Facts as to Which There is a Dispute ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 10) ¶ 22; Defendants' Reply Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 38) ¶ 22.

---

[1] The plaintiff's response to paragraph 13 of the defendant's statement of material facts is blank. Plaintiff's Responsive SMF ¶ 13. After careful review, it appears to me that the plaintiff's response numbered 14 is intended as a responsive to paragraph 13 of the defendants' statement of material facts, and that this misnumbering pattern continues throughout the remainder of the responsive statement of material facts. I will proceed under that assumption, and will not use the actual paragraph numbers in my citations to this document.

[2] A Purchase and Sale Agreement between the plaintiff and H. Wayne Klekamp, Inc., a copy of which was in the Eaton Peabody file. Plaintiff's SMF ¶ 12; Defendants' Responsive SMF ¶ 12.

On December 7, 2004,[3] ELS forward a letter of intent (the "LOI") to the plaintiff. Defendants' SMF ¶ 15; Plaintiff's Responsive SMF ¶ 16. The LOI contained additional terms for the proposed deal. *Id.* ¶ 16. The plaintiff read it and eventually initialed each page. *Id.* ¶ 17. The LOI provides, *inter alia*, as follows:

> In exchange for its interest in each of the Companies, ELS would contribute an aggregate cash payment of $6,750,000 ("ELS Initial Contributions") and Stanley would contribute her interest in each of the properties (Valued at $6,750,000 in the aggregate (the "Stanley Contribution"))[.]

*Id.* ¶ 18.[4] The closing of the deal occurred on April 7, 2005. *Id.* ¶ 19.

On that date, the plaintiff and ELS executed the Limited Liability Company Agreement of Bar Harbor RV Resorts, LLC (the "Initial Agreement"), the company which would serve as the overarching entity for the joint venture. *Id.* ¶ 20. ELS received an initial 50% preferred ownership interest in Bar Harbor RV Resorts, including a preferred priority of distributions. *Id.* ¶ 22. The plaintiff contributed the campgrounds to Bar Harbor RV Resorts. *Id.* ¶ 23. In exchange for her contribution, the plaintiff received a payment of $6.75 million. *Id.* ¶ 24. After the liabilities of the campgrounds were paid off, the plaintiff netted over $2.4 million. *Id.* ¶ 25. Exhibit A to the Initial Agreement listed the members of the joint venture, their capital contributions, and their company percentage. *Id.* ¶ 28.

The plaintiff was also paid a fee for managing the campgrounds, which was initially $104,000 per year and by 2007 was $13,000 per month. *Id.* ¶¶ 26, 27 (plaintiff's qualification).

The Initial Agreement included a "Put and Call" provision pursuant to which ELS could elect to buy out the plaintiff's interest in the joint venture (the Call) or the plaintiff could elect to

---

[3] The defendants' statement of material facts gives the year as 2007. Defendants' SMF ¶ 15. This must be a typographical error. I have substituted what appears to me to be the correct year.
[4] The plaintiff's objections to this paragraph – "the document speaks for itself" and "the Rule of Completeness embodied in Fed.R.Evid. 106[,]" Plaintiff's Responsive SMF ¶ 19, are overruled.

sell her interest to ELS (the Put) at any time during the 48 calendar months after May 1, 2008. *Id*. ¶ 31. In either case, the purchase price was to be calculated by determining the value of the properties at the time of the exercise of the Put or Call using a capitalization rate of 10% on the preceding three years' average annual net operating income, then subtracting out the liabilities of the company and the prior capital contributions of ELS with the balance to repay the plaintiff's capital account and any excess being divided between the plaintiff and ELS. *Id* ¶ 32.

In the years following the closing of the deal, ELS invested approximately $4 million in additional capital contributions to fund improvements to Narrows Too. *Id*. ¶ 33. The plaintiff expected that these improvements, which were completed prior to the 2007 camping season, would vastly increase the net operating income of Narrows Too, possible tripling it. *Id*. ¶¶ 34-35.

Between 2005 and 2007, the campgrounds' income did not increase as the plaintiff and ELS had expected. *Id*. ¶ 37. In fact, the net operating income of the campgrounds in 2007 was less than it averaged in the years immediately preceding the sale in 2005, despite the improvements to Narrows Too. *Id*. ¶ 38. By late 2007, the relationship between the plaintiff and ELS had deteriorated. *Id*. ¶ 39. ELS took over management of the campgrounds and indicated that it would exercise the Call and buy out the plaintiff's interest in the joint venture in 2008. *Id*.

McKay attempted to negotiate with ELS an amicable resolution of the dispute that would be favorable to the plaintiff. *Id*. ¶ 40. In a letter dated December 3, 2007, ELS asserted that the law firm's continued representation of the plaintiff created a conflict of interest because the law firm had performed legal work for the joint venture. *Id*. ¶ 41. The defendants disagreed. *Id*. ¶ 52. The defendants nonetheless advised the plaintiff that fighting ELS's assertion of a conflict of interest would be difficult, time-consuming, and costly. *Id*. ¶ 54. The plaintiff subsequently

engaged David King, Esq., and Paul Chaiken, Esq., at Rudman & Winchell, to represent her with respect to ELS. *Id*. ¶ 57.

On February 29, 2008, ELS formally notified the plaintiff that it would exercise the Call and purchase her interest in Bar Harbor RV Resorts. *Id*. ¶ 62. Since the value of the campgrounds under the buyout formula was less than ELS' capital contributions before taking into account the campgrounds' liabilities, the plaintiff received no additional compensation from ELS. *Id*. ¶ 63.

The plaintiff testified that, in 2004 and early 2005, she had four possible "suitors" for the campgrounds. *Id.* ¶ 83. She discussed a sale with Bob Morgan, to whom she proposed a sale price which he did not accept. *Id*. ¶¶ 84-85, 87. She had discussions with Kampgrounds of America (KOA) concerning a possible ten-year lease of the campgrounds, in which she was not interested. *Id*. ¶¶ 89, 91. She received an unsigned purchase and sale agreement from real estate brokers that outlined proposed terms for a sale of the campgrounds to H. Wayne Klekamp for $14.5 million, but she stated that the brokers "were not reputable people" and she did not want to deal with them. *Id*. ¶¶ 92-93, 101.

The plaintiff received a term sheet dated July 22, 2004, for a proposed sale of the campgrounds to ELS (then Manufactured Home Communities, Inc.). *Id*. ¶ 102. The term sheet proposed a purchase price of $14.5 million. *Id*. ¶ 103. The proposed price did not originate from ELS. *Id*. ¶ 104. The term sheet was nonbinding and was conditioned on satisfactory completion of due diligence by ELS. *Id*. ¶ 106. The plaintiff ignored the term sheet. *Id*. ¶ 105. Marguerite Nader testified on behalf of ELS that after ELS reviewed historical financial information for the

campgrounds, it concluded that the proposed purchase price of $14.5 million was not reasonable. *Id.* ¶ 108.[5]

### III. Discussion

The complaint is alleged in three counts, entitled "Professional Negligence v. Defendants" (Count I), "Breach of Fiduciary Duty v. Defendants" (Count II), and "Unintentional Misrepresentation v. Defendants" (Count III). Complaint and Demand for Jury Trial (Docket No. 1) at 13-15. The defendants contend, Defendants' Motion for Summary Judgment ("Motion") (Docket No. 26) at 23-25, and the plaintiff does not seriously dispute, Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition") (Docket No. 29) at 11-12, that the second count does not state a separate cause of action, but rather restates Count I. I agree. *Smith v. Loyd*, No. RE-01-15, 2002 WL 31360644, at *3 (Me. Super. Sept. 25, 2002). Accordingly, this recommended decision will treat Counts I and II as a single claim.

### A. Professional Negligence

Under Maine law, which is applicable here, a plaintiff alleging attorney malpractice "must show (1) a breach by the defendant attorney of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of the duty proximately caused an injury or loss to the plaintiff." *Niehoff v. Shankman & Assoc. Legal Ctr.*, 2000 ME 214, ¶7, 763 A.2d 121,

---

[5] The plaintiff purports to deny this paragraph of the defendants' statement of material facts. Plaintiff's Responsive SMF ¶ 109. She says, in full: "Marguerite Nader did testify to this at her deposition, but Ms. Stanley disputes the veracity of the statement. *See* Stanley Aff., ¶ 133." *Id.* That paragraph of her affidavit, in its entirety, states: "Paragraph 108 is incorrect or at least misleading. Marguerite Nader never communicated to me that a purchase price of $14,500,000 'was not reasonable.' Indeed, the purchase price I gave her was $13,500,000 and her response was *not* 'that's unreasonable,' but rather, "why don't we enter into a joint venture instead, where you get ½ of the $13,500,000 up front, and the rest, plus more if the joint venture does well, down the road?' Marguerite knew that I was not ready to retire, and that is one reason why she proposed the joint venture deal." Affidavit of Plaintiff Patty Rae Stanley ("Plaintiff's Aff.") (Docket No. 29-2) ¶ 133. This does not constitute a denial of any statement in paragraph 108 of the defendants' statement of material facts, which is supported by the citation given, and the paragraph is accordingly deemed admitted. Local Rule 56(f).

124. The defendants' motion is directed at the requirements of proximate causation and damages. Motion at 5. Even if Counts I and II should be maintained as separate causes of action, the same rules of causation apply to both claims, *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186, 189 n.8, and the rules of damages are common to both claims as well.

### 1. Proximate Cause

With respect to proximate cause,

> [t]he same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty. Proximate cause exists in professional malpractice cases where evidence and inferences that many reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence. The mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to judgment.

*Niehoff,* 2000 ME 214, ¶ 8, 763 A.2d at 124 (citations and internal quotation marks omitted).

The defendants assert that the plaintiff cannot demonstrate that she would have fared better in the absence of the alleged malpractice, so she may not recover, citing *Niehoff*. Motion at 9-14. The only evidence that the campgrounds were worth $13.5 million at the time of the joint venture agreement is the plaintiff's own testimony. The defendants contend that, even if admissible, this testimony is too speculative to support a recovery, citing *Steeves*. *Id*. at 11.

The plaintiff responds that she will testify that the value of her property was $13.5 million as a lay expert, based on her experience "on the job." Opposition at 9-10. Such testimony may well be admissible, but I am unable to determine whether it will be unduly speculative because the plaintiff does not tell the court what her testimony, or its bases, will be. She says merely that she "has testified at her deposition and in her affidavit regarding the several

9

bases for her opinions regarding the value of her camping resorts as of April, 2005." *Id*. at 10. The only record support cited for this conclusory assertion is paragraphs 2-4 of the plaintiff's statement of additional material facts. *Id.*

Paragraph 2 of the plaintiff's statement of material facts, to which the defendants have objected, states, in its entirety: "The Plaintiff's Expert Witness Designation contains an accurate characterization of her background which enables her to render an opinion as [to] the value of [her] camping resorts as of the date of transfer in April 2005. *See* Plaintiff's Expert Witness Designation, attached as SJ App., pp. 121-127." Plaintiff's SMF ¶ 2. The defendants' objection to this paragraph is made "on the grounds that whether Stanley is permitted to testify as to the value of her camping resorts is a question of law." Defendants' Responsive SMF ¶ 2. There is no need for the court to rule on this objection, however, because the paragraph itself is nothing more than a conclusory assertion. If a party wants to place a fact before the court in connection with a motion for summary judgment, it is not enough to incorporate another document by reference in that party's statement of material facts. Absent a specific explanation of what aspects of the plaintiff's background allows her to render an opinion of value, the court is left without the facts underlying the assertion that are necessary to allow the court to determine whether the assertion is supported and upon what specific facts the party actually relies.

Paragraph 3 of the plaintiff's statement of material facts suffers from the same inadequacy. It states: "Ms. Stanley testified as to the basis for her opinions as to the value of her camping resorts as of April, 2005, and such bases included far more than merely the expressions of interest from the Devine real estate brokers on behalf of Wayne Klekamp, the Term Sheet signed by David Fell of ELS and the interest of Kampgrounds of America in a 10 year lease. *See* Stanley Dep., pp. 50-53; compare Motion for Summary Judgment at pp. 13 and 14 setting forth

Ms. Stanley's basis for her opinion." Plaintiff's SMF ¶ 3. What are those bases? That is the explicit information that must be included in a statement of material facts. In addition, a motion for summary judgment is not an acceptable record citation to serve as the authority for an entry in a statement of material facts.

The final paragraph of her statement of material facts cited by the plaintiff in this regard is paragraph 4, which states in full: "In addition, Ms. Stanley was aware of the selling prices of many campgrounds throughout the country through her own travels and through her leadership positions in the industry and the contacts she made from those positions. *See* Stanley Aff., ¶ 138." Again, this is a conclusory statement that lacks the necessary explicit factual statements to allow the court to consider the issue of proximate cause as framed by the defendants. Indeed, paragraph 138 of the plaintiff's affidavit, the cited source, is no more specific than paragraph 4 of the statement of material facts. Plaintiff's Aff. ¶ 138.

Of course, the insufficiency of the plaintiff's response on this issue does not mean that summary judgment for the defendants must necessarily follow. *Lopez v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1517 (1st Cir. 1991) ("Rather, before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." (Citation and internal punctuation omitted.)). Here, the Klekamp "offer" of $14.5 million and the first ELS "offer" of $13.5 million are appropriately before the court as evidence to support the plaintiff's opinion of value.

As the defendants point out, Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply") (Docket No. 37) at 6-7, courts in other jurisdictions have held that unaccepted offers to buy or sell are inadmissible to establish market value. *See, e.g., United*

*States v. 10,031.98 Acres of Land*, 850 F.2d 634, 637 (10th Cir. 1988); *United States v. Smith*, 355 F.2d 807, 811 (5th Cir. 1966); *In re Perry County Foods, Inc.*, 313 B.R. 875, 915 (N.D. Ala. 2004). However, in this circuit, landowners have long been considered competent to testify about the value of their own properties, *e.g., Shane v. Shane,* 891 F.2d 976, 982 (1st Cir. 1989), and a property owner's testimony was not the issue in *Smith* and *Perry*.

While the issue is a close one, made more so by the plaintiff's failure to provide necessary evidentiary detail, I conclude that the defendants' expressed concerns go to the evidentiary weight of the plaintiff's opinion of value rather than its sufficiency as a means to avoid summary judgment. Accordingly, the defendants' causation argument fails.

### 2. *Damages*

With respect to damages, the defendants argue that the language of the agreements that the plaintiff signed with ELS is clear, stating the value of the plaintiff's property as $6.75 million, the amount she received, so she cannot demonstrate that she suffered any damages. Motion at 7-9. This argument is tied to the causation argument, as it is only the plaintiff's personal opinion of the value of the campgrounds at the relevant time that provides any evidence of monetary damages, as I understand the record. Still, if the plaintiff is bound by an unambiguous statement of value on the face of one or more of the agreements as a matter of law, the defendants' argument could succeed.

The defendants point to the following specific entries in the relevant documents: in the LOI, the first page states that the plaintiff's contribution to the joint venture will be "her interest in each of the properties (valued at $6,750,000 in the aggregate (the 'Stanley Contribution')," Defendants' SMF ¶ 18;[6] in the Initial Agreement, in Article III, the plaintiff "shall contribute, or shall cause entities wholly owned by [the plaintiff] to contribute, all of the interests in the

---
[6] See fn. 3, above.

12

Subsidiaries (which collectively have an agreed value equal to $6,750,000)," *id*. ¶ 27, Plaintiff's Responsive SMF ¶ 28; and Exhibit A to the Master LLC Agreement, "[a]ll of the Membership Interests in (i) Stanley Mt. Desert Narrows, L.L.C. (Valued at $3,877,200), (ii) Stanley Patten Pond, L.L.C. (Valued at $1,206,355) and (iii) Stanley Narrows Too, L.L.C. (Valued at $1,666,575)," Defendants' SMF ¶ 29; Plaintiff's Responsive SMF ¶ 30.

The defendants rely on case law restating the well-known legal principle that the parties to a contract are bound by its unambiguous terms. Motion at 6-7. However, that principle binds the parties to the contract as to any claims either might make against the other. Here, the defendants, who were not parties to the contract, seek to use its terms as a shield against the plaintiff's claim against them. That claim, reduced to basic terms, is that the defendants should have advised the plaintiff that the contract or contracts guaranteed her only half of the purchase price that she claims to have expected. The defendants, perhaps anticipating that the court would be unwilling to push this principle so far beyond its accepted boundaries, assert that the court "should not credit [the plaintiff's] feigned ignorance." Motion at 8. But, there is no undisputed evidence in the summary judgment record that can reasonably be read to establish that any ignorance of the specific terms of these contracts claimed by the plaintiff is unreasonable, let alone "feigned." The defendants' argument ultimately goes to the plaintiff's credibility, an issue than can only be determined at trial.

### 3. *Negligent Misrepresentation (Count III)*

The plaintiff contends that the "[d]efendants have remained silent with regard to Plaintiff's third Count – Negligent Misrepresentation" and that this count must therefore proceed to trial. Opposition at 13. The defendants admit that they "did not specifically move for summary judgment on Plaintiff's negligent misrepresentation on this basis[,]" but contend that

13

the court should nonetheless grant summary judgment *sua sponte* based on *Meador v. Albanese Law Office,* No. 5:08-CV-562, 2010 WL 3807163, at *4 (N.D.N.Y Sept. 23, 2010). Reply at 10 n.14. Curiously, they also assert that the plaintiff's statement "is not accurate" because the arguments that they made with respect to Counts I and II apply "equally to Plaintiff's claims for negligent misrepresentation, as damages are an essential element of that tort." *Id*. at 5 n.4.

I need not resolve this possible dilemma because I have recommended that the defendants' motion as to the first two counts of the complaint be denied. The defendants do not offer any reason other than those proffered in connection with the first two counts why they are entitled to summary judgment on Count III.

### B. Specific Damages Claims

The defendants contend that they are entitled to summary judgment on the plaintiff's claims for punitive and emotional distress damages. Motion at 14-23. The plaintiff opposes this portion of the defendants' motion.

#### 1. Punitive Damages

Under Maine law, punitive damages are available only when a plaintiff proves, by clear and convincing evidence, that a defendant acted with malice. *Sebra v. Wentworth*, 2010 ME 21, ¶ 14, 990 A.2d 538, 543. Malice exists when the defendant was motivated by ill will toward the plaintiff, or acted so outrageously that malice may be implied. *Id*. The defendants assert that there is no evidence that they acted with any malice in their dealings with the plaintiff. Motion at 15-19.

The plaintiff responds that to enter summary judgment on her claim for punitive damages "at this stage of the proceedings would be premature." Opposition at 10. She asserts that the

court cannot give this matter "the proper consideration" before the close of evidence at trial. *Id*. This argument is incorrect as a matter of law.

This court has entered summary judgment on claims for punitive damages before trial when the summary judgment record lacked evidence of malice. *See, e.g., Curran v. Richardson*, 448 F.Supp.2d 228, 233 (D. Me. 2006); *Bernier v. UNICCO Serv. Co.*, No. 04-280-P-C, 2006 WL 1046927, at *10-*11 (D. Me. Apr. 19, 2006); *J.S. McCarthy Co. v. Brausse Diecutting & Converting Equip., Inc.*, No. Civ. 04-107-B-W, 2005 WL 946318, at *10 (D. Me. Apr. 22, 2005). Certainly, it may do so when a party who bears the burden of proof on the issue merely asks the court to wait until trial to learn what her evidence might be. Contrary to the plaintiff's contention, claims for punitive damages are not exempt from consideration by the court on a motion for summary judgment. Because the plaintiff has made no attempt to meet her evidentiary burden on this point, the motion for summary judgment on her claims for punitive damages should be granted.

### 2. Emotional Distress

The defendants contend that damages for emotional distress may be recovered in legal malpractice actions only when the defendant's actions involve egregious conduct on the part of the attorney. Motion at 20-23. They rely on *Garland v. Roy*, 2009 ME 86, 976 A.2d 940. *Id*. at 20-21.

The plaintiff responds:

> Plaintiff agrees that the burden on a plaintiff in a legal malpractice case to generate facts that permit a claim for emotional distress damages is a heavy burden. We agree that we shall have to show that the Defendants' conduct was "egregious," under the teachings of Garland v. Roy, 2009 ME 86. And we do not know yet whether we shall be able to shoulder that onerous burden. But neither do the Defendants or this Court. As with the previous argument, it is simply premature to make any ruling on this issue at this stage.

15

> Moreover, depending on what counts of the Complaint survive, the Garland case may not be the touchstone to use in determining whether Plaintiff may be entitled to such damages. For instance, in a breach of fiduciary case or a negligent misrepresentation case, the standard may be different.

Opposition at 11.

Again, once a defendant has moved for summary judgment on a claim, the burden is on the plaintiff to show that evidence exists that could support a verdict in her favor on that claim. It is never enough to assert that summary judgment is "premature" on a particular claim. If the plaintiff has not had enough time to develop evidence relating to the claim, Fed. R. Civ. P. 56(d) provides the remedy. The plaintiff has not taken that path here.

If the plaintiff believes that a different legal standard for recovery of emotional distress damages exists for one or more of her claims, it is incumbent upon her to identify that standard, cite the source of that standard, and specify the evidence that may reasonably be interpreted to meet that standard. She has done none of that here. Once the defendants have challenged that claim through the mechanism of summary judgment, which is designed, after all, to weed out claims that cannot be proven before the court and the parties are put to the expense and effort of trial on those claims, the plaintiff must shoulder her burden of producing the evidence to support her claim.

On the showing made, the defendants are entitled to summary judgment on the plaintiff's claims for damages for emotional distress.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED** as to the plaintiff's claims for punitive damages and damages for emotional distress, and otherwise **DENIED.**

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of September, 2011.

          /s/ John H. Rich III
          John H. Rich III
          United States Magistrate Judge